UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAVADA A. STRICKLAND

PLAINTIFF

VS

ELAINE CHAO, SECRETARY,
UNITED STATES DEPARTMENT
OF TRANSPORTATION

Case: 1:20–cv–01890  JURY DEMAND
Assigned To : Boasberg, James E.
Assign. Date : 7/7/2020
Description: Employ. Discrim. (H–DECK)

DEFENDANTS

## COMPLAINT
## JURY TRIAL DEMANDED

COMES NOW Strickland, LaVada A. Strickland, by and through her counsel, Edward Blackmon, Jr. and Blackmon & Blackmon, PLLC, and file this action against Defendant, United States Department of Transportation. As more specifically set forth below, Strickland has been subjected to race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., (hereafter "Title VII"), and has been unlawfully retaliated against in the terms and conditions of her employment with the United States Department of Transportation Federal Aviation Administration.

## PARTIES

1.     LaVada A. Strickland, is an adult female resident of Fairfax County, Virginia residing at 102 Meadows Lane, Alexandria, VA 22304

2.     Defendant, Elaine Chao, Secretary, United States Department of Transportation. Federal Aviation Administration. The United States Department of Transportation/Federal Aviation Administration is an agency of the United States government. The Defendant is doing business in this judicial district at several locations, one of which Strickland was stationed.

## JURISDICTION AND VENUE

3.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343(a)(3), and 1343(a)(4) and 42 U.S.C. § 2000e-5.

1

4.     The claims asserted herein arose in the District of Columbia which is also the location of the acts relevant to the claims asserted by Strickland.  Venue is appropriate in this Court under 28 U.S.C. § 1391(e) and 42 U.S.C. § 2000e-5(f)(3).

5.     Strickland has fulfilled all conditions precedent to the institution of this action under Title VII, as she filed her Charges of Discrimination, Retaliation, and Harassment with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the occurrence of the last discriminatory acts, as alleged in EEOC Agency No. 2019-28378-FAA-02, and further, timely filed her lawsuit within ninety (90) days of the receipt of her Notice of Dismissal from the EEOC. **(Exhibit "1").**

## **RELATED HISTORICAL FACTS**

6.     LaVada A. Strickland was hired by Defendants, Paul Eckert et al. in December 2015 as a Management and Program Analyst.

7.     Strickland began her employment for the U.S. Dept. of Transportation, Federal Aviation Administration as an excepted service employee on a permanent basis and worked hard to excel in various areas of need including as the IT project manager leading technical projects. While Strickland was employed as a Management and Program Analyst, Paul Eckert was her manager.  Strickland made numerous complaints to Mr. Eckert regarding intimidation, harassment and bullying directed towards her by employee Leslie Higgins.  Eckert dismissed her complaints as personality conflicts and never reported Strickland's complaints to the Federal Aviation Accountability Board or any other authority within a timely manner (72 hours), of any complaint as required under FAA Order 1110.125B, and Management's Failure to Report allegations set forth in Chapter 3, Paragraphs 3(a) through 3(c).

8.     On or about mid-April 2017 harassment actions began when Strickland started a detail as Director of Workforce Initiatives with FAA Human Resources Organization. Leslie

Higgins, APO-400 co-worker; J-band employee, was the initiator and instigator of ongoing harassment.

9.    On or about mid- May 2017 the pattern of harassment and bullying by Higgins continued and was reported to APO-400 Manager, Paul Eckert by Strickland via numerous verbal reports and emails with pleas for help to end the continuous, deliberate and malicious actions which had created a hostile working environment that was intimidating and stressful.

10.    From on or about May 2017 to December 2018 Strickland continued reporting bullying and harassment to Eckert through mostly verbal communications. Eckert would call team members into his office and conduct sessions where he would ask one person to say what they felt about what someone else said. These were unproductive and did not amount to any change in bullying and harassment actions nor did they improve the hostile working environment. On one of these 'sessions' Eckert attempted to set a subsequent one-on-one session with Strickland and Leslie Higgins. Higgins stated "I don't have time for these feel good sessions" and Eckert scheduled no further meeting with Higgins and Strickland. During team meetings, Higgins was demeaning and continuously interruptive to Strickland when she spoke. In one meeting, Strickland was referred to as 'i-t by Higgins. Eckert corrected her each time and said "LaVada", but Higgins never addressed Strickland by name.

11.    On May 26, 2017, Strickland met with Paul Eckert to discuss the unfair workload in APO-400. They were: teleworking less than any other employee under Eckert's purview and requested unscheduled telework rather than announced telework; Strickland informed Mr. Eckert that she was putting in more work hours than were allowed to be accounted for under the 'credit hour' policy and she was not being compensated for those hours.; offer of K-band position by Mr. Eckert based on the level of work that Strickland performed. Mr. Eckert told Strickland that he did not know if it would be in APO or APL.; additional pay for leadership role that Strickland was

preforming; As Strickland was on a K-band detail and still performing more than the 80/20 (APO) split agreed to in detail agreement, Strickland was performing upwards of 60 hours per week with no compensation; and, team members going around Strickland for discussions that should have included Strickland.

12.   On Sept. 6, 2017, Strickland asked Eckert to address disrespectful communications from Higgins. Ms. Higgins later stated, via email, "I'm sorry I am balancing 10 things this AM. I did not mean to be rude. I just have been frustrated with Sharon and her commitment to the team. She committed to this and has been being coached on this the whole time. This leave popped up out of the blue and she needs to honor at least one commitment she has had to this group. You have not been here in months and have no idea. I sure did not mean to be disrespectful. Just wanted you to know it's been addressed". Sharon is an African American female employee who was detailed to APO-400.   Higgins frequently engaged in disparaging language against black employees in APO-400 and with and about African American employees in the Agency. **(Exhibit "2"),**

13.   On Sept. 11, 2017, Strickland met with Eckert to follow up on hostile working environment and to report the lack of support by any personnel in APO-400 on two major technology program Strickland was leading for the organization, how this was affecting Strickland's workload, and requirements for Strickland to go outside of APO-400 for strategic and business planning partners to aid in assuring project was successful. Eckert continued to listen to grievances but never followed up with action towards relieving Strickland's workload. Eckert encouraged Strickland to continue to identify personnel outside of APO-400 that might be able to help and provide input to the project.

14.   On or about Oct. 10, 2017, Strickland notified Eckert that work was continuing to be piled onto her workload and that she was already overloaded with additional work requirements

4

that were not in her purview of responsibility. Strickland iterated that APO-400 had four other employees that were assigned small tasks and duties Strickland was asked to do were within other employee's areas of responsibility. Eckert said that he was working on it and that he was aware Higgins and some new people did not have system knowledge to handle issues that ended up being assigned to Strickland. Strickland pointed out that she was working long hours that she could not be compensated for and asked about recording and being paid for the overtime hours. Eckert said that APO did not allow overtime.

15.   On October 16, 2017, Eckert sent an email to Strickland regarding end of year performance review where he stated, "Drawing on the FY18 APO-400 business plan content, I put in two goals for IT (dashboard and database). The third goal is just for secondary backup intermittently, if someone else has to be out of the office. We would of course keep this to an absolute minimum." However, additional assignments were not kept to a minimum and Strickland was doing the work of three people because, either they refused to do the work or they were incapable of the tasks requirements for successfully completing the job.

16.   On October 16, 2017, Strickland requested a meeting with Eckert to again discuss continuing and ongoing disrespectful communications, undermining of Strickland's work and the stressfulness of the environment brought on by Higgins. Strickland said that if it continued, she would be forced to report it outside of APO-400 but, Strickland was encouraged to give Eckert a chance to handle it.

17.   On or about November 3, 2017, Strickland asked Eckert if he had a minute to talk about her vacation and leave time.  Strickland again stressed that she had use or lose hours and that she still could not take leave as she would want because of the workload.  Eckert suggested that she begin taking every Friday off to use her leave time.  Strickland said that is not how she wanted to use her leave and even if that were the case, her workload would prevent her from

5

enjoying the time off.  Strickland also brought up again that she worked far over the number of hours that she was able to record using the APO method that allowed up to 24 hours of additional time.  Strickland told Eckert that accumulating more time-off was not helpful for her because, she always ends up losing at the end of the year, and that on occasions, she donated some of her time to others through the FAA process.  Eckert did not offer any additional remedy.

18.   On January 24, 2018, Strickland sent an email to Eckert requesting a meeting to address workload due to lack of support from APO-400 team personnel, continued bullying and harassment, and hostile work environment. The following was discussed with Mr. Eckert:  The Performance Committee meeting and that Strickland was not allowed to present status of projects as was agreed. Strickland voiced to Eckert that he had silenced her voice although it was her hard work on the technical projects that was bringing them to fruition and that the idea and collaborations that lead to the success of these projects was a result of  Strickland's ideas.  Eckert said that the federal shut-down had occurred and he did not have the opportunity to talk through it and that he did not intend for it to come off this way and that he apologizes.  Strickland also told Eckert that because of Higgins influence, Strickland was receiving no support from her team members during the phased work and that Strickland was forced to rely on external planning community to test products and provide feedback. He acknowledged that Higgins knowledge was minimal to non-existent but that she was concerned that everything was taken care of.  Strickland also spoke to Eckert about his not addressing the issues of bullying and harassment and that Eckert was rewarding negative behavior which only served to keep bullying and hostility going since there were no repercussions. Eckert said that his intent was to be open to Strickland's comments and be concerned with what was being said.  **(Exhibit "3")**

19.   On March 8, 2018, Strickland requested a meeting with Eckert to talk about technical project options which could not be talked about as an APO-400 team because of Higgins continued

attacks on Strickland and Strickland's work during meetings, made them unbearable and unproductive.

20.   On or about the first week of May 1, 2018, Eckert told Strickland that in his discussions with AHR, Strickland would be allowed to continue teleworking from Mississippi, which had begun in January 2018, as long as Strickland reported to the Washington DC Headquarters facility for two days out of each pay period. Strickland told Eckert that would be no problem and they agreed this would begin in June 2018.

21.   On May 18, 2018, Strickland sent another email to Eckert asking that he address ongoing harassment and hostility so that a stop could be put to it as actions had long since created a hostile work environment and attacks were continuing. Strickland explained that this was extremely stressful and that with the workload she was carrying, it was too much. **(Exhibit "4")**

22.   On May 21, 2018, Strickland spoke to Defendant, Eckert asking for meeting to again discuss APO-400 bulling and harassment and hostile work environment. Strickland asked that it be reported to the appropriate authorities as this had been allowed to continue for much too long. Eckert listened to Strickland but told Strickland if it was reported, "it may not turn out the way you want". Strickland took this as a direct threat to prevent her from filing actions outside of APO-400 manager, Eckert **(Exhibit "4").**

23.   On or about June 4, 2018, Strickland reported for one week at the Washington DC Headquarters office.  During this week, a meeting was scheduled with Strickland, Eckert, Nguyen and David Chien, Executive Director; APO-1.  In this meeting, Strickland was caught off guard as Nguyen and Eckert began to badger her about teleworking. Nguyen told Strickland that if they had a posted position now, he would not hire her for it. Strickland felt attacked and became fearful for her job. This went on,  one after the other, going around the table to complain about her telework schedule, when just prior to her internally going to them about the bullying and harassment in her

office, they were allowing her to report two days per pay period to maintain the telework status. Strickland asked if it had anything to do with her work performance, and Eckert admitted that there was no problem with the work she was doing, and that Strickland was performing and delivering products effectively.

24.    On or about July 25, 2018, Strickland sent an email to Mr. Eckert to again request support from bullying and harassment and the hostile working environment. Mr. Eckert and Associate Director, Nguyen called Strickland to talk about the situation and asked Strickland what she wanted to happen. Strickland told them she wanted the bullying and harassment to stop and that it had caused her tremendous stress and anxiety.  Strickland said she experience physical sickness whenever she was about to call into a team meeting because she knew that it would be demeaning and constant attacks towards her, and that progress on her projects would be undermined by Higgins and others that Higgins had encouraged.  Strickland stressed that it was a mob mentality, and that it should not be allowed. Nguyen suggested that perhaps a class should be given to APO-400 personnel on workplace bullying and harassment to help educate employees. This did not happen. **(Exhibit "5")**

25.    On July 31, 2018, Strickland sent an email to Associate Director, Minh Nguyen and Manager, Eckert asking what actions were or would be taken regarding her report of bullying, harassment and hostile working environment.  **(Exhibit "6")**

26.    On or about August 5, 2018, Associate Director Nguyen informed Strickland that APO had reported bullying, harassment and hostile work environment claims to the Accountability Board on July 27, 2018 via teleconference call. Eckert told Strickland that they "did not believe it rose to the level of bullying and harassment but they reported it anyway".

27.   On or about August 6, 2018, Strickland filed a claim with the FAA Accountability Board, alleging harassment, bullying and subjection to a hostile work environment by Higgins and Eckert. **(Exhibit "7")**

28.   On August 14, 2018, Strickland sent an email to inform Paul that the hostile work environment was continuing with, contractor, Linda Mercado, refusing to provide appropriate assistance to Strickland for video-conferencing equipment in APO-400 weekly planner meeting. **(Exhibit "8")**

29.   On August 24, 2018, Strickland continued to be subjected to hostile work environment issues; unbalanced workload; refusal of team to schedule technical project meetings with Strickland who was project manager for all technology projects for the APO-400 organization.

30.   On or about late September, 2018, Strickland contacted Eckert to ask about end-of-year awards and award for technical project work that had been completed under Strickland's leadership. Mr. Eckert set an appointment to speak with Strickland. When they spoke, Eckert informed Strickland that he had put in a request for her to be awarded but, it was denied by upper management to include Nguyen, Dave Chien and .other.

31.   Strickland has worked for the Federal Aviation Administration since January 2013 and her work has always been stellar and beyond what is expected of her. Strickland has received varying awards throughout this time and 2018 was the first year that she had not received an awarded for her efforts. Defendant, Eckert acknowledged that Strickland should have received an awarded, but there was nothing he could do. Strickland was aware that this was due to her formal complaints of bullying, harassment, hostile working environment and her initial claim of retaliation against APO to the Office of Aviation Policy and Plans, International Affairs & Environment

32.   On September 25, 2018, in an email to Higgins and Eckert, Strickland, requested another meeting with Eckert regarding Higgins disrespectful behavior and the continued piling of work onto Strickland.  In the email, Strickland told Mr. Eckert that she did not have the bandwidth to support additional work as there were two new team members that were available to handle it and again, asked that there be a balance of workload.  **(Exhibit "9" )**

33.   On September 25, 2018, Strickland was presented a Notice to Terminate Telework via email from Eckert demanding Strickland report to the FAA Headquarters in Washington DC on October 29, 2018.  On the same day, September 25, 2018, Strickland contacted the FAA Accountability Board to inform them that she wanted to file a claim of retaliation based on her previous report of bullying and harassment (July 2018). **(Exhibit "10")**

34.   On October 2, 2018, Strickland sent an email to Eckert and Nguyen stating the following: "I brought to your attention at the conclusion of our meeting with APO-400 last Thursday that Leslie [Higgins] repeatedly referred to me as "she" or "i-t" in the meeting.  Her references included saying and/or implying that "she" or "i-t" had not responded to work that was outside my purview.  This is consistent with Higgins' continued attacks against Strickland in an attempt to bring about public humiliation as well as continuing to undermine Strickland's work, thus, continuing the bullying and harassment of Strickland. **(Exhibit "11" )**

35.   On or about October 1, 2018, Strickland filed AFSCME Union grievance for the revocation of telework for personal reasons in violation of Article 33, Section 8 of the Termination of Telework Agreement.  **(Exhibit "12")**

36.   On or about October 19, 2018, Strickland filed a second retaliatory claim with the FAA Accountability Board, alleging that she was denied a performance award in retaliation for filing of a bullying and harassment claim in August 2018, a retaliation claim in September 2018. **(Exhibit "13")**

37.    On or about October 29, 2018, Strickland went on FMLA leave which continued until May 11, 2019. During this time, Defendant, Eckert was put on a detail in another APL office and Higgins was placed in the acting Program Managers position for which Eckert had previously held.

38.    On or about December 20, 2018, Strickland received an email from an employee where Higgins referenced herself as Manager of the APO-400 team. Since this was the person who was the initiator and instrument of the bullying, harassment and hostile work environment that Strickland had been subjected to for the past two (2) years, Strickland forwarded a message by email to Eckert to inquire what was going on and if the position had been posted as Strickland would also have been eligible to apply or be appointed as acting manager in that position. Both Strickland and Higgins were in APO-400, J-bands but, Strickland had more experience and education. Even though Strickland was on FMLA, she was in constant communications with Eckert during this time and was to be kept apprised of situation that affected her employment in APO-400. **(Exhibit "14")**

39.    On December 20, 2018, Defendant, Eckert offered the following response to Strickland's inquiry: "In response to your email forwarded below, please let me offer the following responses. First, the APO-400 manager position has not been posted with an official job announcement. That is because I still officially occupy the position but will be on detail to the APL Chief of Staff's office. Leslie has been asked to step into the manager role on an interim basis. Also, I am consulting with the APL/APO management team and AHR, through Minh as my supervisor, regarding preparation of a position to convey to you by email regarding extension of your FMLA and use of any other leave options. Following the conclusion of those consultations, you will be contacted regarding the FMLA issue." **(Exhibit "15")**

40.    On May 13, 2019, Strickland reported to the FAA Headquarters facility in Washington DC. Once her work day began, she met with Associate Director, Nguyen. Strickland

11

was informed that she would not report to APO-400 but would be detailed to the APO-200, under Manager, Matthew Klein. Strickland was assigned as an Economist managing the Aviation and Airways Trust Fund forecast. Strickland was not offered compensation for change of duty and assignments.  Strickland asked Nguyen to be considered for the Program Manager position that had been vacated when Eckert was placed on detail in December 2018. Higgins had been placed in that position on a six month detail and her six months was coming up in mid-June 2019.  Higgins was also in a J-band position along with Strickland in APO-400. Nguyen said he would look into it, talk to Executive Director, David Chien, and get back with Strickland. Nguyen confided in Strickland that the only reason Higgins was placed into the acting Program Manager position was because APO didn't have anyone else, indicating it had nothing to do with her ability to perform the duties.

41.    On or about May 21, 2019, Strickland's newly assigned detail manager, Klein, informed Strickland that the position did not allow telework as there were quick turnaround needs that may require immediate attention and therefore she would not be allowed to have set telework days and would need to request telework on an ad hoc basis and get approval before being allowed to telework. To this day, Strickland has not had a 'quick turnaround' request that would not have allowed her to respond via telework. Further, the entire Agency is teleworking now (COVID-19), and it is not restrictive to the duties or mission of the Agency.

42.    Strickland was denied the right/opportunity to detail into APO-400 Manager's position although detailee, Higgins, in the same J pay band under APO-400, had been in place for more than six months, where six months is the limit unless the job is posted. Strickland was told that AHR confirmed the 6-months limitation and had decided to post the position under the NTE, but that it could take up to three (3) months or so to complete the process (on or about May 28, 2019).

43.   On or about June 20, 2019, Defendant, Nguyen and AHR posted the Program Manager position vacated by Eckert shortly after Strickland requested the same opportunity to detail into the position.

44.   On or about July 1, 2019, Strickland was told that the organization would assign her additional duties as liaison with the Commercial Space (AST) organization to work on and learn forecast methodology for commercial space activity in a partnership to transfer the forecasting arm from AST to the APO organization in the coming fiscal year (FY2020). Strickland did not object to the additional work but continued to ask about the detail for the Program Manager's position based on her qualifications, fair employment practice and AHR policy for job opportunities.

45.   On or about July 3, 2019, Strickland received an SF-50 for the assignment in APO-200 and it was written as detailed to APO-200 for "unclassified duties". The effective date was June 9, 2019 with an NTE of December 17, 2019. After receiving the SF-50, Strickland went to Nguyen and asked why the SF-50 was listed as "Unclassified Duties" and why the start date was listed as June 9, 2019, when the detailed officially start on May 13, 2019.  Nguyen stated that the detail dates could be corrected.

46.   On or about July 9, 2019, Strickland was sent an SF-50 Memo covering the period June 9 – December 8, 2019 with four responsibilities that included: 1. Monitoring trust fund revenue, 2. Updating, maintaining and executing trust fund revenues forecast models, 3 Developing responses to internal and external queries about the FAA Trust Fund and revenue components and, 4. Other assignments and duties as they become available. The SF-50 did not change.

47. On or about July 15, 2019 Strickland again brought to Nguyen's attention that her position was that of an Economist, and her SF-50 should be reflective of such. Nguyen stated that he could not just assign her as an economist and that human resources would have to review her

credentials to ensure that she met the qualifications for the job classification. Strickland iterated to Nguyen that getting the correct job classification for what she was assigned on May 13, 2019, did not negate the request for assignment to detail into the APO-400 Program Manager position, particularly since this detail was not requested but forced on Strickland as a result of the bullying, harassment and hostile working environment in APO-400.

48.    On or about July 17, 2019, Nguyen requested Strickland email him, her resume and professional qualifications.

49.    On July 18, 2019, Strickland sent the following email to Nguyen: "Please find attached copies of my resume and undergraduate/graduate transcripts. In submitting these documents for proper classification for the work that I am doing with APO-200, I want to emphasize that it in no way means that the application and referral for the APO-400 Program Manager position that I have applied is withdrawn.". Strickland certified for the APO-400 Program Manager position through the AHR process. **(Exhibit "16")**

50.    On July 18, 2019, Nguyen responded via email: "Yes, these documents are for the 200 detail. The 400 acting manager position is a different path". **(Exhibit "17")**

51.    On or about July 29, 2019, Strickland interviewed for the APO-400 Program Manager position that she certified for through the AHR process.

52.    On August 8, 2019, Strickland followed up with Nguyen via email on the status of the determination of the appropriate job classification for work in APO-200/300, since Strickland had not heard back. Nguyen confirmed, via email "I just checked with APL-11 and was told that AHR already reviewed your resume and transcript, and that you can be detailed into an Economist position. They are doing paperwork and will keep me posted." Nguyen acknowledged that Strickland was confirmed by AHR as Strickland has a doctorate in Public Policy and Political

Economy with a formal work background in statistical analysis, using both quantitative and qualitative analysis methods and tools. **(Exhibit "18")**

53. On September 26, 2019, Strickland met with Nguyen to get the outcome of her interview for the Program Manager position for APO-400 since she had not been notified of outcome decision. In this meeting Nguyen would not share how many people interviewed for the position, but said that it was more than Higgins and Strickland, and that Higgins was selected. Nguyen said he had a great pool of candidates and candidates ranked from good to great in interview scoring. Strickland asked besides interview, what else was taken into consideration such as certifications and education. Nguyen said both were, the interview along with the application package are considered for selection. Strickland expressed that she did not expect that the selection would be fair and that she was aware that Higgins had been preselected for the position and it therefore, did not matter what Strickland's package and interview looked like as the outcome was predetermined.

54. On or about October 1, 2019, Strickland received notification that a new SF-50 was issued terminating the current "unclassified" detail as of September 28 2019.

55. On or about October 24, 2019, Strickland received notification that a new SF-50 was issued assigning her as an Economist (0110) with an effective date of September 29, 2019 and NTE of December 8, 2019.

56. On or about October 25, 2019, Strickland made Nguyen aware that the SF-50 was still incorrect as it was not retroactive to May 13, 2019, the day she was reassigned (detailed) to APO-200 with the work responsibilities. Nguyen said paperwork could be corrected at any time, but to-date is has not been corrected.

57. As a direct result of Higgins, Eckert and Nguyen's conduct, and the Federal Aviation Administration refusal to prevent said conduct, Strickland became depressed and began both

15

psychiatric and psychological therapy. Strickland began to dread going to work and became anxious, mistrusting and depressed.

58.   Notwithstanding evidence to the contrary, Higgins, Eckert, and Nguyen, continued a course of persistent and unabated bullying, harassment and retaliation of Strickland solely because of the exercise of her constitutionally and statutorily protected right to complain about this harassment of her and other misconduct. Frustrated at Defendant U.S. Department of Transportation, Federal Aviation Administration's failure to protect her against the acts of decimation and retaliation, Strickland filed a grievance with the FAA/EEO in May 2019.

59.   Following the aforesaid tortured events involving Strickland and Higgin, Eckert and Nguyen, the United States Department of Transportation/Federal Aviation Administration knew, or should have known, that the acts of discrimination, intimidation and retaliation would continue unless remediated by the United States Department of Transportation/Federal Aviation Administration.

## COUNT 1

60.   Strickland incorporates herein the proceeding paragraphs.

61.   Strickland, over the course of her employment with Defendant, engaged in protected activity, the same being her right pursuant to Title VII to complain about negative, harmful, and adverse job action that was undertaken against her because of her race.

62.   Strickland was assigned to work with Higgins by the Defendant, United States Department of Transportation/Federal Aviation Administration, while knowing of her history of hostile and adversarial interaction with Strickland.

63.   Eckert and Nguyen prior to the actions complained of hereinafter, had carried out acts of retaliation against Strickland, because of Strickland's exercise of her protected rights under Title VII. Because Eckert and Nguyen's prior acts of retaliation were not checked by the Defendant,

they were at liberty to continue their retaliatory conduct toward Strickland, knowing that they would not suffer any consequences. However, Eckert was forced to detail outside of APO after allegations of bullying, harassment and hostile work environment were ignored and it was found that he had not reported it to the appropriate authorities.

64.    Defendants conduct and actions as stated and listed herein were pretextual in furtherance of Defendants' ongoing efforts of a pattern and practice of discriminating against Strickland because of the prior exercise by her of her Title VII rights, her race (African American).

65.    As a direct and proximate result of discriminatory and retaliatory actions of the Defendant United States Department of Transportation, Federal Aviation Administration, Strickland is entitled to an award of damages.

## COUNT II

66.    In December, 2015, Strickland was assigned to the United States Department of Transportation, Federal Aviation Administration in Washington, DC.  She was performing her assigned duties, when she bullying and harassment began on or about May 1, 2017 by the employee of APO-400, Leslie Higgins. Ms. Higgins repeatedly interrupted Strickland in team meetings in a disruptive manner preventing Strickland from providing updates in a team setting. Ms. Higgins, repeatedly criticized, demeaned and undermined Strickland's work.  At one point during a verbal assault, Ms. Higgins repeatedly referred to Strickland as "i-t" as she proceeded to undermine Strickland work efforts.  Mr. Eckert failed to report Strickland's reporting of bullying, harassment and hostile work environment as required by the Federal Aviation Administration.

67.    The unwavering verbal assault administered by Defendant Federal Aviation Administration Program Manager, Paul Eckert and Associate Director, Minh Nguyen was a direct response and in retaliation for Strickland having exercised her protected right to pursue relief through EEO or Title VII Complaints. This is evident from Mr. Eckert's reference to a fact that

Strickland may want to think about filing an official complaint and that, "it may not turn out like you want", and Mr. Minh Nguyen statement to Strickland that he would not hire her if the job were posted now" in their unwarranted verbal assault, and effort to intimidate Strickland.

68. On June 7, 2018, Mr. Eckert scheduled a meeting to speak with Strickland in her Director's office, along with her Associate Director, Mr. Nguyen. Believing that the requested meeting was related to her employment, Strickland recorded the meeting on her cell phone, where Mr. Minh Nguyen stated to Strickland that he 'would not hire her if the job were posted now', in his unwarranted verbal assault, and effort to intimidate and demean Strickland.

69. The abusive, demeaning verbal assault, left Strickland traumatized, humiliated and in fear of losing her job.

70. Defendant, its agents, and employees engaged in targeted retaliation, harassment of Strickland because of her race (African American). Defendant United States Department of Transportation, Federal Aviation Administration, its agents, and employees subjected Strickland to terrifying, humiliating, harmful, and degrading verbal assault, thereby, causing Strickland pain, stress, and anxiety. The above-mentioned acts were severe or pervasive and created a hostile work environment for Strickland.

71. Although the Defendant, United States Department of Transportation, Federal Aviation Administration, knew or should have known of Higgins, Eckert and Nguyen's harassment, intimidation, and hostile work environment, the agency nevertheless, failed to take prompt and effective remedial action. Accordingly, United States Department of Transportation, Federal Aviation Administration, is liable for the substantial harm and damages inflicted upon Strickland.

**COUNT III**

72. Defendants engaged in a pattern of intentional and systemic discrimination and retaliation against Strickland. The discriminatory and retaliatory practices engaged in by Defendant adversely affected Strickland with respect to the terms and condition of Strickland's employment as set forth hereinafter:

    a.    On September 25, 2018, revoking telework of Strickland for personal reasons unrelated to job performance.

    b.    In September 2018, denying performance award for completion of Agency-wide technical systems project.

    c.    In June, 2018, denying Strickland equal opportunity to detail as Program Manager in APO-400.

    d.    On May 13, 2019, reassigning Strickland to new organization without increase in pay based on job classification and duties assigned.

    e.    Strickland was denied equitable pay based on job duties and employee in APO-400 with same J pay band and less responsibilities.

    f.    One of the individuals, Higgins, involved in the bullying and harassment of Plaintiff, was temporarily promoted into the APO-400 position (December 2018). No notification was provided nor was Strickland offered the same opportunity.

    g.    Strickland asked to be offered the same opportunity after six (6) months, but was denied the opportunity by management (On or about May 13, 2019).

    h.    Strickland was denied the right/opportunity to detail into APO-400 Manager's position although detailee, Leslie Higgins, in the same J pay band under APO-400, had been in place for more than six months, where six months is the limit unless the job is posted. Strickland was told that AHR confirmed the 6-months limitation and they decided to post the position under the NTE, but it could take up to three (3) months or so to complete the process (on or about May 28, 2019). The job was posted on June 20, 2019 and closed on July 1, 2019 shortly after Strickland requested the same opportunity to detail into the position.

73.    Defendant United States Department of Transportation, Federal Aviation Administration managers and supervisors made offensive and derogatory comments and other statements evidencing their animus and bias against Strickland as an African American, and

because of the exercise by Strickland of her Title VII protected rights to seek redress for Defendant's racial and discriminatory actions with reference to her employment.

74.   Similarly situated white females were not subjected to the acts complained of herein by Strickland.

75.   Strickland seeks an injunction that prohibits the United States Department of Transportation, Federal Aviation Administration from assigning Leslie Higgins to any supervisory position which Strickland is working; and require the United States Department of Transportation, Federal Aviation Administration to take steps necessary to protect Strickland and other African American employees from work place harassment, retaliation; and enjoined Defendant from discriminating against Strickland on the base of race.   Strickland also seeks an award of compensatory damages for pain and suffering, reasonable attorney's fees, and cost.

76.   Defendant's complaints and actions against Strickland were pre-textual in furtherance of its illegal retaliatory conduct toward Strickland, in violation of Title VII of the Civil Rights act, as amended.

77.   Defendant's acts as described above were undertaken with malice and reckless indifference to Strickland's federally-protected rights.

78.   As a direct result of Defendants' conduct, Strickland suffered damages including severe physical and emotional distress, embarrassment and humiliation, for which she is entitled to an award of damages.

## <u>COUNT IV – RETALIATION</u>

79.   Strickland incorporates herein the proceeding paragraphs.

80.   By conduct described above, Defendant discriminated against Strickland because of her race and in retaliation for her complaints of race and sex discrimination, in violation of Title VII of the Civil Rights Acts of 1983, as amended, by subjecting her to adverse conditions of

20

employment, and adverse employment decisions, to which similarly situated white female employees were not subjected.

81.   Defendant's acts described above were undertaken with malice and reckless indifference to Strickland's federally-protected rights.

82.   As a result of the conduct described above, Strickland suffered damages including but not limited to, loss of personal and sick leave, loss of wage earnings at the appropriate pay rate, loss of equal opportunity for employee advancement, severe physical and emotional distress, embarrassment, and humiliation.

83.   Title VII prohibits employers form retaliating against any employee because his/her engaged in a protected activity.  Resisting and/or complaining of racial discrimination is protected activities under Title VII.

84.   Defendant and its agents, servants, and/or employees, engaged in unlawful retaliation in violation of Title VII

85.   Strickland engaged in protected activity by complaining of harassment, and bullying, hostile and intimidating work environment and discrimination based on her race.

86.   Defendant U.S. Department of Transportation and the Federal Aviation Administration, its agents, and /or employees retaliated against Strickland on the basis of her protected activity, and took material and adverse employment actions against her, including creating and permitting a hostile work environment.  Defendant failed to take effective remedial action such that the Defendant's action would deter a reasonable employee in the same situation from making a complaint.

## CONCLUSION AND SUMMARY

87.   Seeking to redress these violations and to protect her rights under the law, Strickland filed administrative EEO complaints.  In response, Defendant has retaliated against Strickland

and took actions against her that have affected the terms, conditions and privileges of her employment. Defendant has further retaliated against Strickland in its refusal to promote Strickland and by making false assertions about Strickland's performance to justify the promotion denial.

88.    These adverse actions have hampered and interfered with Strickland's ability to advance in her career and have significantly harmed her professional reputation. By denying Strickland the career ladder, non-competitive promotion, and taking other steps that reflect negatively on Strickland's abilities, Defendant has effectively undermined and damaged Strickland's career. These and other adverse actions constitute a continuing violation of Strickland's rights under Title VII of the Civil Rights Act of 1964.

89.    As a direct and proximate result of the intentional acts of Defendant and/or agents or employees acting on its behalf, Strickland has suffered grievous harm to her career and continues to suffer such harm. These injuries and losses include, but are not limited to, loss of substantial past and future salary, benefits and entitlements, loss of professional status and career-enhancing opportunities and loss of retirement savings and benefits.

90.    As a direct and proximate result of the intentional acts of Defendant and/or agents or employees acting on its behalf, Strickland additionally has suffered great emotional distress, embarrassment, humiliation, pain and anguish, as well as damage to her professional career and reputation. This extreme stress has necessitated that Strickland to seek medical treatment for the mental injuries and resulting physical manifestations of stress caused by the workplace discrimination and reprisal by Defendant and its agents.

### RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests this Court to:

A.    Enter judgment for Strickland against Defendant on all Counts;

B.    Declare that the conduct of Defendant violates Title VII of the Civil Rights Act of 1964, as amended;

C.    Enjoin and prohibits the United States Department of Transportation, Federal Aviation Administration from assigning Leslie Higgins to any supervisory position which Strickland is working; and require the United States Department of Transportation, Federal Aviation Administration to take steps necessary to protect Strickland and other African American employees from work place harassment, retaliation; and enjoined Defendant from discriminating against Strickland on the base of race and sex;

D.    Enjoin and prohibit the Defendant from retaliating against Plaintiff for the exercise of her protected rights to complaint about Defendant's acts of discrimination on the basis of race;

E.    Enjoin and prohibit Defendant, its agents, employees, from harassing and intimidating Plaintiff for the exercise of her protected rights under Title VII of the Civil Rights Acts of 1964, as amended;

F.    Order the Agency to refrain from taking any act of retaliation, including reassigning or relocating Strickland because of the exercise of her protected rights, as well as to make work assignments available that enable her to use her expertise in the best interest of the Agency;

G.    Award Plaintiff compensatory damages for the denial of an increase in pay, based on job classification and duties assigned;

H.    Award Strickland compensatory damages for the injuries and losses that she suffered in an amount to be proved at trial;

I.    Order that Plaintiff be promoted to APO-400 Manager's position with back pay;

23

J.   Order Defendant to pay all reasonable attorneys' fees, court costs, and expenses incurred by Strickland as a result of Defendant's actions and inactions, as well as pre-judgment and post-judgment interest;

K.   Enjoin and prohibit the Defendant from denying and retaliating against Plaintiff in the assignment of telework; and

L.   Order such other equitable and legal relief as the Court deems necessary and appropriate.

## JURY DEMAND

Strickland requests a trial by a jury of her peers as to all claims set forth in this Complaint.

Respectfully submitted this the 11th day of June, 2020.

LAVADA A. STRICKLAND

BY: _____ pro se

LAVADA STRICKLAND, *pro se*
102 Meadows Lane
Alexandria, VA 22304
214-477-0621
lavadaas@aol.com